Attachment A

FILED

OCT 24 2019

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Jamar Holt
_____

_____

*Your full name*

v.

Fred Entzel in his personal and official
_____

capacity; Eric Howell in his personal

and official capacity; JOHN DOE #1

(Known as Acting Warden Keyes) (cont'd on attached)
*Enter above the full name of defendant(s) in this action*

**FEDERAL CIVIL RIGHTS
COMPLAINT
(*BIVENS* ACTION)**

Civil Action No.: 3:19cv 181

*(To be assigned by the Clerk of Court)*

Groh / Trumble / Sims

## I.   JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**.  The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.   PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

A.   Name of Plaintiff: Jamar Holt          Inmate No.: 41094-037
Address: FCI Gilmer PO Box 6000 Glenville, WV 26351

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

---

**Attachment A**

B.    Name of Defendant: Fred Entzel

Position: Warden

Place of Employment: FCI Hazelton

Address: 1640 Skyview Dr. Bruceton Mills, WV 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: Entzel is the top executive at the FBOP FCI Hazelton

B.1    Name of Defendant: Eric Howell

Position: Captain

Place of Employment: FCI Hazelton

Address: 1640 Skyview Dr Bruceton Mills, WV 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: Howell is the Captain at FCI Hazelton

B.2    Name of Defendant: JOHN DOE #1 (Known as Acting Warden Keyes)

Position: Acting Warden

Place of Employment: FCI Hazelton

Address: 1640 Skyview Dr. Bruceton Mills, WV 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

**Attachment A**

If your answer is "YES," briefly explain: <u>Keyes is the Acting Warden</u>
<u>at FCI Hazelton</u>

B.3    Name of Defendant: <u>JOHN DOE #2 (Known as Acting Captain J. Squires)</u>
Position: <u>Acting Captain</u>
Place of Employment: <u>FCI Hazelton</u>
Address: <u>1640 Skyview Dr. Bruceton Mills, WV 26525</u>

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: <u>J. Squires is the Acting</u>
<u>Captain at FCI Hazelton</u>

B.4    Name of Defendant: <u>JOHN DOE #3 (Known as Lieutenant Rodriguez)</u>
Position: <u>SHU Operations Lt.</u>
Place of Employment: <u>FCI Hazelton</u>
Address: <u>1640 Skyview Dr. Bruceton Mills, WV 26525</u>

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: <u>Rodriguez is the Lt. for</u>
<u>SHU at FCI Hazelton</u>

**Attachment A**

B.5    Name of Defendant: ___*N/A*___

Position: _____

Place of Employment: _____

Address: _____

_____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☐ Yes    ☐ No

If your answer is "YES," briefly explain: _____

_____

_____

_____

## III. PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution:  FCI Gilmer

A.    Is this where the events concerning your complaint took place?
☐ Yes    ☒ No

If you answered "NO," where did the events occur?
 FCI Hazelton in Bruceton Mills, WV.

B.    Is there a prisoner grievance procedure in the institution where the events occurred?    ☒ Yes    ☐ No

C.    Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
☐ Yes    ☒ No

D.    If your answer is "NO," explain why not: As detailed within this Complaint, the Defendants prevented me from filing administrative grievances.

_____

_____

E.    If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed

**Attachment A**

and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1 _N/A  All requests for forms wee denied_

LEVEL 2 _____

LEVEL 3 _____

## IV.   PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?          □ Yes      ☒ No

B.   If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on  a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

1.   Parties to this previous lawsuit:

                                N/A

Plaintiff(s):_____

Defendant(s):_____

2.   Court: _____
     *(If federal court, name the district; if state court, name the county)*

3.   Case Number:_____

4.   Basic Claim Made/Issues Raised: _____

_____

_____

_____

5.   Name of Judge(s) to whom case was assigned:

_____

6.   Disposition: _____
     *(For example, was the case dismissed? Appealed? Pending?)*

7.   Approximate date of filing  lawsuit:_____

**Attachment A**

8.    Approximate date of disposition. Attach Copies:_____

C.    Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?

    ☐ Yes    ☒ No

D.    If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

    N/A

E.    Did you exhaust available administrative remedies?

    ☐ Yes    ☒ No

F.    If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.

    N/A

G.    If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

1.    Parties to previous lawsuit:

    N/A

---

**Attachment A**

Plaintiff(s): _____

Defendant(s): _____

2.   Name and location of court and case number:

_____

_____

_____

3.   Grounds for dismissal:   □ frivolous   □ malicious
     □ failure to state a claim upon which relief may be granted

4.   Approximate date of filing lawsuit: _____

5.   Approximate date of disposition: _____

## V.   STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)*

CLAIM 1: Violation of Fifth Amendment (Defs. Entzel, Howell, Keyes, Rodriguez)
Defendants violated 28 CFR §§ 541.23 and 541.25 by confining Holt to the SHU for two-months without clearly articulated objective evidence that he posed a threat to life, property, self, staff, other inmates, the public, or to the security of the orderly running (cont's on attached).

Supporting Facts: In April 2019, I filed an administrative remedy regarding

**Attachment A**

an improper encumberance of my trust fund account. The administration of FCI ignored my request for relief. I emailed Entzel regarding a status of my BP-9 and advised that I would be filing a BP-10. One week later, I was thrown in the SHU. (cont'd on attached)

CLAIM 2: Violation of Eighth Amendment (Defs. Squires, Rodriguez). Defendants violatred 28 CFR §§ 541.20(a); 541.31; and 541.22. Their conduct subjected Holt to certain deprivations that were not part of, nor contemplated by his sentence issued by the Dist. Ct. of Md. The conditions forced on Holt by Defendants, were not reasonably (cont'd on attached)

Supporting Facts: The conditions of confinement in the FCI SHU were truly inhumane. 28 CFR § 541.20(a) requires inmates to be "housed in the least restrictive setting necessary", and mandates that "living conditions for inmates...will meet or exceed applicable standards." (cont'd on attached)

CLAIM 3: Obstruction of Meaningful Court Access-Federal Law Violation (Defs. Howell, Keyes, Squires, Rodriguez). Defendants intentionally prevented Holt from accessing state, federal , and his own legal materials. Their conduct violated 28 CFR §§ 543.11(c), (1); 541.31(j); FBOP P.S. § 1315.07 (10); and 28 U.S.C. § 1654. (Cont'd on attached)

Supporting Facts: On or about April 26, 2019, after Holt was thrown in the SHU, all of his personal property—including his legal material, was collected by FCI staff. He was denied access to his property and legal materials during his two month SHU confinement. (cont'd on attached).

CLAIM 4: Violation of Fifth Amendment (Defs. Howell, Keyes, Squires, Rodriguez). Defendants intentionally deprived Holt of his property right to litigate pursuant to the United States Constitution, Amendment V. Defendants violated 28 CFR §§ 541.31(1); 541.31(j); 543.11(a), (i); FBOP P.S. § 1315.07(10); and 28 U.S.C. § 1654 (cont'd on attached).

Supporting Facts: Paragraphs 24 to 26 are incorporated by reference as if fully set forth herein.

**Attachment A**

CLAIM 5: Retaliation (Defs. Howell, Entzel, Squires). Within one week of Holt's email to Entzel, he was thrown in the SHU. Defendants kept Holt confined for two-months, refused to provide him with administrative remedy forms, and refused all court access. Thus, Defendants' conduct deterred Holt from exercising his First Amendment (cont'd on attached)

Supporting Facts: 28 CFR § 541.26(d) provides for the ability of an inmate to "submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program, 28 CFR Part 542, Subpart B". 28 CFR § 541.26(o) provides for the ability of an inmate to "submit a formal grievance challenging any aspect (cont'd on attached).

## VI.   INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

Defendants intentional conduct has deprived Holt of his rights that are guaranteed by the U.S. Constitution; obstructed his abilty to litigate; and recklessly caused him to be physically and mentally injured.

## VII.   RELIEF

State **BRIEFLY and EXACTLY** what you want the Court to do for you. *Make no legal arguments. Cite no cases or statutes.*

Holt requests judgment to be entered in his favor and an order and judgment declaring: (cont'd on attached).

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate.  Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___Glenville  WV___ on ___10-15-19___.
                (Location)                  (Date)

_____
Your Signature

Page 7 Cont'd (Defendants Names): in his personal and official capacity; JOHN DOE #2 (Known as Acting Captain J. Squires) in his personal and official capacity; JOHN DOE #3 (Known as Lieutenant Rodríguez) in his personal and official capacity.

Claim 1: Violation of Fifth Amendment (Defs. Entzel, Howell, Keyes, Rodriguez).
Defendants violated 28 CFR §§541.23 and 541.25 by confining Holt to the Segregated
Housing Unit (SHU) for two months without clearly articulated objective evidence
that he posed a threat to life, property, self, staff, other inmates, the
public, or to the security of the orderly running of the institution. Defendants'
violation of 28 CFR CFR §§ 541.20; 541.26; and 541.32 deprived Holt of the
mandated SHU reviews proscribed by federal law. Defendants' conduct violated
Holt's protected Fifth Amendment right to not be deprived of liberty or property
without due process. Holt was deprived of a meaningful opportunity to challenge
the conditions of his confinement.

Claim 1 Supporting Facts:

1. In April 2019, holt filed an administrative remedy regarding an improper
encumberance of his prison trust fund account. The Administration of FCI Hazelton
("FCI") ignored his request for relief.

2. Holt then emailed Entzel regarding the lack of response to his administrative
remedy request, he advised Entzel that he would be filing an appeal to the
Regional Office of the FBOP. One week later, Holt was thrown in the SHU.

3. On Friday April 25, 2019, Holt was instructed by his Unit Officer to
immediately report to the Lieutenant's office. Upon arrival at the Lt's office,
Holt was advised by Lt. Snow that he was being transferred on the following
Monday (2 days later) but since the Warden (Entzel) decided to close one of
the housing units over the weekend, Holt was told he had to spend the weekend
in the SHU because the prison did not have enough beds in general population
to accomodate the number of inmates at the facility.

4. Holt spent the next eight weeks in the SHU. During his confinement, hundreds
of new inmates were transferred to FCI and were placed in available cells
within general population.

5. Federal law limits the conditions which warrant the placement of an inmate
in the SHU. Particular to Holt's situation, two conditions are required for
placement in the SHU. Both conditions must be supported by "objective evidence
[which must be] clearly articulated." 28 CFR § 541.25.

1

6.   Pursuant to 28 CFR § 541.23, Holt could only be placed in the SHU if his:

> (c) presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security of the orderly running of the institution [and]
>
> (c)(2) [he] is pending transfer to another institution or location.

7.   Holt's placement in the SHU for two months was not supported by any objective evidence nor were the reasons for his placement articulated by any documentation.

8.   Due to the significant hardship and deprivations endured by SHU inmates, federal law expressly mandates intermittent reviews of the reasons for an inmate's placement in the SHU; the scheduled reviews are non-discretionary. To prove due process, federal law requires exact intervals of review with exact criteria to be reviewed. The law specifies attendance by the inmate at the scheduled reviews. 28 CFR § 541.26 provides in part, that the Segregation Review Official (SRO)[1] will conduct the scheduled reviews identified below: (all emphasis herein added)

> (a) Three day review. Within three work days...the SRO will review the supporting records.
>
> (b) Seven day review. Within seven continuous calendar days...the SRO will formally review your status at a hearing **you can attend.** subsequent reviews of your records will be performed in your absence by the SRO every seven continuous calendar days thereafter.
>
> (c) Thirty day review. After every 30 calendar days...the SRO will formally review your status at a hearing **you can attend.**

9.   The law requires each review to include:

> (a) A Review of the inmate's records while in the SHU (Form BP-A0292);
>
> (b) All available memoranda from staff (including psychology staff);
>
> (c) All available investigatory memoranda.

(28 CFR § 541.26).

---

1    "Ordinarily the SRO is the Captain (may be delegated to a Lieutenant responsible for supervision of the SHU)". 28 CFR § 541.26.

2

10. The law requires the SRO to complete "a Special Housing Review (BP-A0295) after review of the Special Housing Unit Record and other relevant documentation". Id. The law requires the FBOP staff to "maintain permanent logs". Id.[2] The law specifies that the scheduled reviews must include "at a minimum, Institution Executive Staff, Correctional Services, Unit Staff, Health Services, and Psychology Staff." Id.

11. 28 CFR § 541.32(b) requires an examination "including a personal interview" by "mental health staff...after every 30 calendar days". The examination, to be submitted to the SRO for review, must be a "written report" which addresses: "The inmate's adjustment to surroundings; the threat the inmate poses to self, staff, and other inmates."

12. The reviews identified above, clearly required by federal law, did not occur and Holt was not permitted to challenge the conditions of his confinement.

Claim 2: Violation of Eighth Amendment (Defs. Squires, Rodriguez). Defendants violated 28 CFR § 541.20(a); 541.31; and 541.22. their conduct subjected Holt to certain deprivations that were not part of, nor contemplated by his sentence issued by the District Court of Maryland. The conditions forced on Holt by Defendants, were not reasonably related to a legitimate penological goal, were punitive in nature, and represented an exaggerated response to concerns of the prison administration. Defendants were notified of the inhumane conditions Holt was subjected to yet they failed to abate the conditions. Defendants ignored the conditions, thus they continued the deprivations to harass Holt and to intentionally deprive him of the minimal civilized measures of life's necessities.

Claim 2 Supporting Facts:

13. The conditions of confinement in the FCI SHU were truly inhumane. 28 CFR § 541.20(a) requires inmates to be "housed in the least restrictive setting

---

2    28 CFR § 541.20 mandates "accurate and complete records will be maintained on conditions and events in the special housing units".

necessary", and mandates that "living conditions for inmates...will meet or exceed applicable standards."

14.   28 CFR § 541.31 "Conditions of confinement in the SHU" mandates that "living conditions in the SHU will meet or exceed standards for healthy and humane treatment". Notably, the law provides for the following specific conditions:

(a) Your living quarters will be appropriately heated, and maintained in a sanitary condition...

(c) You will receive adequate institution clothing...[and] will be provided necessary opportunities to exchange and/or have it washed.

(d) **You will receive a mattress, blankets, a pillow, and linens** for sleeping. You will receive necessary opportunities to exchange linens...

(f) You will receive personal hygiene items necessary to maintain an acceptable level of personal hygiene...you will have access to hair care services as necessary.

(g) You will receive the opportunity to exercise outside your individual quarters at least five times per week...

(h)(1) In administrative detention status you are ordinarily allowed a reasonable amount of personal property and reasonable access to the commissary...

(h)(3) Eighteen categories of personal property are identified with permissible quantities to be "ordinarily allowed in administrative detention (if not otherwise a threat to institution security)".

15.   Holt's placement in the SHU was purportedly in administrative detention, but the egregious deprivations and harsh conditions show his status was punitive as a disciplinary segregation. Holt's requests and complaints went ignored by the FCI staff including the top executives of the facility. SHU staff responded to Holt's requests by insulting him and vebrally berating him.

16.   For two-months, holt was deprived of adequate health care. Holt submitted seven sick-call requests, all were ignored. He suffered from significant allergic reactions to the hygiene products provided, no relief was provided from the staff.

4

17. Holt expressly informed Officer Miles and SHU Lt. Rodriguez upon his admission tot he SHU that he was on a pork-restricted diet. During his confinement, he was repeatedly served pork. When he informed Ofr. Hayes of his dietary restriction, he asid "just eat it" and walked away.

18. Holt was deprived of toilet paper for four days. When Rodriguez was informed of the deprivation, he ignored Holt and walked away. Holt also asked three other officers for topilet paper, none responded to his requests.

19. Due to the unlawful confinement, Holt was deprived of all exercise. SHU staff routinely used deprivation of exercise as a punishment. When Holt informed Rodriguez about the issue, he told Holt that he could go to recreation at the appropriate time, that time never came because Holt was not permitted to attend recreation for two months.

20. 28 CFR § 541.32 provides that "[a] health services staff member will visit you daily to provide necessary medical care." as evidenced in the attached Declarations, this did not occur. Holt submitted seven sick-call requests asking to see medical staff for issues including pain to his back and hips. No medical staff responded in two months.

21. 28 CFR § 541.31(g) requires the opportunity to "exercise outside of your individual quarters at least five hours per week". During the two months of SHU confinement, Holt was not permitted to exercise outside of his cell. The SHU staff, particularly Officer B. Miles, routinely used the right to exercise as a punitive measure against SHU inmates. This violates federal law, "[r]estrictions or denial of exercise is not to be used as punishment. The Warden or Acting Warden may not delegate the authority to restrict or deny exercise." Id.

22. 28 CFR § 541.31 expressly requires SHU inmates to have a mattress and pillow. Holt was not given a mattress nor a pillow and was forced to sleep on a steel slab for two months. He requested a mattress from multiple staff members including Howell, Squires, and Rodriguez.

23. Other deplorable conditions which Holt was forced to endure included: housing in a cell that was covered in fecal matter with no proper means to cleanse and disinfect the cell where he had to eat his meals; inesct infestation

5

scalding hot water that made showers impossible; being forced to wear dirty and improperly fitting clothing; degrading insults from staff.

Claim 3: Obstruction of Meaningful Court Access-Federal Law (Defs. Howell, Keyes, Squires, Rodriguez). Defendants intentionally prevented Holt from accessing state, federal, and his own legal materials. Their conduct violated 28 CFR §§ 543.11(c), (1); 541.31(j); FBOP P.S. § 1315.07(10); and 28 U.S.C. § 1654. The deprivation of Holt's access to legal materials completely prevented him from meaningfully litigating a pending action in this court.[3] Defendants conduct violated Holt's rights secured under the U.S. Constitution, Amendments I and V. Defendants' conduct obstructed Holt's court access so that he could not meaningfully know or research the proper elements required to effectively respond to adversarial pleadings and court orders.

Claim 3 Supporting Facts:

24.  On or about April 26, 2019, after Holt was thrown in the SHU, all of his personal property—including his legal material, was collected by FCI staff. He was denied access to his property and legal materials during his two month SHU confinement.

25.  When informed of certain court-ordered deadlines, Rodriguez ignored Holt's requests to access his legal material. When holt attempted to inform Captain Howell of his imminent deadlines, he told him to place a cop-out to use the law library. Holt placed nine cop-out requests to use the law library. For two months, he was not permitted to use the law library a single time nor was he permitted access to his legal material. The deprivation of his court access prevented him from filing a 28 U.S.C. § 2241 petition to challenge the conditions of his confinement.

26.  The Defendants' intentional and willful misconduct has caused Holt to be disadvantaged and prejudiced in the prosecution and defense of certain litigated actions including:

_____

3    See Holt v. Entzel, 3:18-cv-46 (ND WV 2018).

6

a) Complete inability to file a meaningful habeas petition pursuant to 28 U.S.C. § 2241 challenging the conditions of Holt's confinement. Holt was unable to research the statutory language; identify the required court rules and forms to file the action; and he was unable to locate applicable case law to request injunctive relief. The deprivation of administrative remedy forms (as discussed herein) effectively closed the doors to the court for a § 2241 action.

Claim 4: Violation of Fifth Amendment (Defs. Howell, Keyes, Squires, Rodriguez). Defendants intentionally deprived Holt of his property right to litigate pursuant to the U.S. Constitution, Amendment V. Defendants violated 28 CFR §§ 541.31(1); 541.31(j); 543.11(a), (i); FBOP P.S. § 1315.07(10); and 28 U.S.C. § 1654. The deprivation of Holt's access to legal materials completely prevented him from prosecuting and defending certain litigated actions including a habeas filing. Defendants' conduct violated Holt's rights secured under the U.S. Constitution, Amendment V.

Claim 4 Supporting Facts:

27.  Paragraphs 24 to 26 are incorporated by reference as if fully set forth herein.

Claim 5: Retaliation (Defs. Howell, Entzel, Squires). Within one week of Holt's email to Entzel, he was thrown in the SHU. Defendants kept Holt confined for two-months, refused to provide him with administrative remedy forms, and refused all court access. Thus, Defendants' conduct deterred Holt from exercising his First Amendment rights pursuant to the U.S. Constitution.

Claim 5 Supporting Facts:

28.  28 CFR § 541.26(d) provides for the ability of an inmate to "submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program, 28 CFR Part 542, subpart B". 28 CFR § 541.26(o) provides for the ability of an inmate to "submit a formal grievance challenging any aspect of your confinement in the  SHU through the Administrataive Remedy Program".

29.  42 U.S.C. § 1997(e) requires an inmate to exhaust his administrative

7

remedies prior to filing a civil action in federal court.

30. During Holt's two-month SHU confinement, he submitted multiple requests for the applicable forms to submit a grievance pursuant to the FBOP Administrative Remedy Program. Notably, requests were made directly to the SHU Operations Lieutenant (Rodriguez) and to the facility Captain (Howell). None of Holt's requests were responded to and he was denied access to the applicable forms.

31. After being stuck in the Hazelton SHU for two months, Holt was transferred to FCI Gilmer, directly from his SHU confinement. Upon arrival at Gilmer, Holt asked his case manager (S. Carr), for administrative remedy forms, she would not provide him with the forms because the grievance involved another institution and were over the twenty-day time limitation.

Claim 6: Supervisor Liability (Defs. Howell, Keyes, Squires). As a result of Defendants' knowledge of their subordinate's misconduct, their failure to act shows supervisory indifference and/or tacit authorization of the subordinates misconduct.

Claim 6 Supporting Facts:

32. Rodriguez is a subordinate to Squires and Howell, who are both subordinates of Keyes. Keyes was aware of the misconduct of his subordinates yet failed to prevent the injuries to Holt. Howell and Squires were made aware of the misconduct of Rodriguez and the SHU staff who report to Rodriguez, yet failed to prevent the injuries to Holt. Defendants knowledge of their subordinates' misconduct and their failure to act, shows supervisory indifference and/or tacit authorization of the subordinates misconduct.

8

Section VII Relief:

Holt requests judgment to be entered in his favor and an order and judgment declaring:

1) Entzel, Howell, Keyes, and Rodriguez violated Holt's Fifth Amendment right to due process;

2) Squires, Rodriguez violated Holt's Eighth Amendment right to be free from cruel and unusual punishment;

3) Howell, Keyes, Squires, and Rodriguez violated Holt's federal right to litigate and access the courts;

4) Entzel's, Howell's, and Squires' conduct was in retaliation for Holt exercising his constitutional rights; and

5) Howell, Keyes, and Squires were aware of the misconduct of their subordinates and failed to prevent the constitutional injuries to Holt.

Holt requests an order and judgment enjoining the further obstruction of his court access.

Holt requests an order and judgment awarding him nominal damages and any other relief as may be just and proper.

Holt requests a trial by jury for this action.